IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIFFANY ALEXANDER                  :
                                   :
                                   :
    v.                             :   Civil Action No. DKC 14-2469
                                   :
UIP PROPERTY MANAGEMENT, INC.      :
                                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination case are: cross-motions for summary judgment filed by Defendant UIP Property Management, Inc. ("Defendant") (ECF No. 28) and Plaintiff Tiffany Alexander ("Plaintiff") (ECF No. 36); and Defendant's motion to stay discovery (ECF No. 28). The relevant issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted. Defendant's motion to stay discovery will be denied as moot, and Plaintiff cross-motion for summary judgment will be denied.

**I.   Background**

   **A.   Factual Background[1]**

Plaintiff was employed by Defendant as an assistant property manager from January 5 until December 31, 2012.

---

[1] The following facts are uncontroverted, alleged by Plaintiff, or construed in the light most favorable to her.

Plaintiff was diagnosed with hyperthyroidism in October 2012, and she later learned that she has Graves' disease. These medical conditions affect the proper functioning of the endocrine system, and Plaintiff was referred for further testing and treatment. In October 2012, Plaintiff informed her supervisor, Katrina Crews, that she had "thyroid issues" requiring ongoing medical treatment. Plaintiff kept Ms. Crews informed regarding her treatment needs and presented Ms. Crews with a schedule of appointments from October 2012 to January 2013. Until Plaintiff's dismissal, Ms. Crews granted Plaintiff's requests for leave from work to attend medical appointments.

On December 29, 2012, Ms. Crews informed Plaintiff that Plaintiff's position was to be eliminated due to budget cuts, effective December 31, 2012. Ms. Crews met with Plaintiff alone in the leasing office, instructing others to leave the room. Ms. Crews also locked the door from the inside of the office. Ms. Crews presented to Plaintiff a three-page Separation Agreement and General Release (the "Agreement"). (*See* ECF No. 29-1). In the second amended complaint, Plaintiff alleges that "Ms. Crews' oppressive distractions led to [Plaintiff] signing the Agreement without knowingly and voluntarily realizing that she would be waiving any legal claims she had against Defendant." (ECF No. 27 ¶ 46). In the Agreement, Defendant

2

offered Plaintiff more than three thousand dollars – three weeks' pay – in exchange for a release of claims against Defendant. (ECF No. 29-1 ¶¶ 2, 8). According to the Agreement:

> The release of employment-related Claims includes, but is not limited to: any Claims under any local, state or federal laws prohibiting discrimination in employment, including without limitation, the federal Civil Rights Acts, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act; Claims under the Employee Retirement Income Security Act or the Family Medical Leave Act . . . ; or any other Claim alleging a legal restriction on the [Defendant's] right to terminate any of its employees.

(*Id.* ¶ 9). Plaintiff alleges that she took no part in the drafting of the Agreement and that Ms. Crews did not inform her that she could consult with counsel before signing the Agreement. (ECF No. 27 ¶¶ 41, 43, 48). The Agreement, however, provides that:

> [Plaintiff] acknowledges that [Defendant] has advised [her] to consider this agreement carefully, and advised [her] of [her] right to consult an attorney before signing the agreement. Employee also acknowledges that [she] has been afforded 21 days from the day that [she] received the document to consider the agreement prior to signing it. [Plaintiff] has the right to revoke the agreement for a period of 7 days after signing this agreement by giving written notice to [Defendant] . . . . By signing this Agreement, [Plaintiff] acknowledges that [she] freely, voluntarily, and without coercion, entered into the

3

>     agreement and agreed to be bound by its
>     terms.

(ECF No. 29-1 ¶ 12). The parties signed the Agreement on December 29, 2012 and Plaintiff's last day in the employ of Defendant was December 31. Plaintiff did not revoke the Agreement within seven days of its execution, and Plaintiff retained the consideration she received.

Plaintiff also alleges that, several weeks after her employment was terminated, she learned that her position was not eliminated, but that a new employee had taken her former position with Defendant. (ECF No. 27 ¶ 50).

### B. Procedural History

On June 29, 2013, Plaintiff contacted the U.S. Equal Employment Opportunity Commission ("EEOC") to report allegations of discrimination and retaliation. On April 30, 2014, the EEOC issued a right to sue letter, which Plaintiff received on May 5. Plaintiff initiated this action by filing a complaint on August 4, 2014. (ECF No. 1). Defendant moved to dismiss the first amended complaint under Fed.R.Civ.P. 12(b)(6), arguing that the Agreement bars Plaintiff from pursuing her claims. (ECF Nos. 13; 14). The court denied Defendant's motion to dismiss because Defendant could not demonstrate that "any rejoinder to the affirmative defense is foreclosed by the allegations in the complaint." (ECF No. 19, at 6).

Subsequently, Plaintiff filed a second amended complaint asserting five counts: termination of Plaintiff's employment in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Count I); retaliation against Plaintiff for requesting an accommodation for her disabilities (Count II); interference with Plaintiff's rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Count III); interference with Plaintiff's prospective FMLA rights (Count IV); and retaliation against Plaintiff for attempting to exercise her FMLA rights (Count V).  (ECF No. 27). Defendant moved for summary judgment and to stay discovery. (ECF No. 28).  Plaintiff filed her response and cross-motion for summary judgment on the claims asserted in the second amended complaint.  (ECF No. 36).  Defendant replied and responded (ECF No. 40), and Plaintiff replied (ECF No. 41).

**II. Cross-Motions for Summary Judgment**

    **A.   Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may

reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [the] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright, et al., Federal Practice & Procedure § 2720 (3d ed. 1998).

    **B.   Analysis**

The Agreement contains a release provision that, if valid, would bar the claims Plaintiff now asserts against Defendant. To determine whether the release provision forecloses Plaintiff's claims, the court must examine whether she signed the Agreement under duress and executed it knowingly and voluntarily. *Randolph v. Caruso Homes, Inc.*, No. RWT-13-2069, 2014 WL 4661985, at *4-5 (D.Md. Sept. 16, 2014). In resolving Defendant's motion to dismiss, the court determined that, based on the allegations in the complaint, "the totalities of circumstances [were] not so clearly established on the . . . record" to warrant dismissal. (ECF No. 19, at 6). Here, however, Defendant moves for summary judgment on Plaintiff's second amended complaint, arguing that evidence from Plaintiff's

sworn deposition establishes that there is no factual basis to dispute the applicability of the Agreement's release provisions. (ECF No. 29, at 1).

   1.  **Duress**

> In Maryland, duress is "a wrongful act which deprives an individual of the exercise of his free will." *Eckstein v. Eckstein*, 38 Md.App. 506, 512 (1978). The wrongful act may take the form of an "improper threat which leaves the victim with no reasonable alternative other than to execute the agreement." *Employers Ins. Of Wasau v. Bond*, No. HAR-90-1139, 1991 WL 8431, *2 (D.Md. Jan. 25, 1991). This can take the form of "economic duress," which is apparently the basis of [the plaintiff's] assertion of duress here. *Id*. However, the potential financial impact from the loss of a job is not, by itself, sufficient to set aside a contract for duress. *See Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F.Supp.2d 488, 492 (D.Md. 2002). Otherwise, nearly every settlement ending an employment dispute would be voidable at the election of the employee. *See id*.

*Randolph*, 2014 WL 4661985, at *4 (footnote omitted).

Plaintiff's meeting with Ms. Crews took place in the leasing office, which is apparently an apartment living room. (ECF No. 29-2, at 14, 22). Ms. Crews entered the room, asked other people to exit, locked the door from the inside, made copies of the contract on the copy machine, and then sat down in front of the leasing office desk. (*Id.* at 22). Plaintiff was sitting at the desk she normally occupied and Ms. Crews sat across from her. (*Id.* at 14, 22, 24). According to Plaintiff,

Ms. Crews expressed regret that she had "to do this." (ECF No. 36-3, at 23). Ms. Crews explained the 2013 budget and said, "At this time your position is being eliminated. This is something that UIP has decided. Here's the agreement. You'll have three weeks of pay." (*Id.* at 24). Plaintiff had several questions for Ms. Crews:

> I told her this was completely coming out of nowhere for me because I had recently gotten a $2,000 bonus, and you know, was looking forward to going into the 2013 season and was looking forward to the changes that we were making at the property. I asked her if there would be any way that I could, you know, possibly stay on or if there was, you know, anything else I could do. If there was anything that could be talked about, and she said, no, this is just what they've decided.

(*Id.*). Shortly thereafter, Ms. Crews asked Plaintiff for her keys. (*Id.* at 25). The meeting lasted approximately ten minutes (*id.* at 24; ECF No. 29-2, at 28), and "eventually . . . [Plaintiff] left" the room (ECF No. 29-2, at 24).

These facts do not support a claim of duress, and, in fact, show that there was no duress. Plaintiff was at her normal place of employment and conversed with her supervisor, Ms. Crews. During the course of the meeting, Plaintiff did not try to leave the room. (*Id.* at 25, 29). Ms. Crews did not appear to have any weapons on her person (*id.* at 16), and Plaintiff does not recall whether Ms. Crews touched her at any point

during the meeting (*id.* at 18). Although Ms. Crews asked people to leave the room and locked the door from the inside so that others could not easily enter, there is no evidence that Plaintiff could not leave if she had wished. (*Id.* at 29). The door could be unlocked and opened from the inside. (*Id.* at 30). The conversation proceeded in a normal tone of voice (*id.* at 32), and Plaintiff was able to ask questions, which Ms. Crews answered (*id.* at 26).

Plaintiff argues that she signed the Agreement because Ms. Crews intimidated her and "oppressively distracted [her] from reading the Agreement." (ECF No. 36-2, at 9). However, Plaintiff did not read the Agreement during the meeting because Ms. Crews was speaking, informing Plaintiff of the budget cuts and separation payment. (ECF No. 29-2, at 27). Plaintiff was told that she had to sign the Agreement in order to receive three weeks of severance benefits, but she never asked and was not expressly told that she had to sign immediately or even that day, although she assumed that she had to. Moreover, Plaintiff only assumed that she had to sign the Agreement immediately because Ms. Crews placed a pen on top of the Agreement when she presented it to Plaintiff. (*Id.* at 33). Defendant was under no obligation to give Plaintiff an extensive period of time to consider the Agreement, and, in any event, its terms afforded her twenty-one days to sign the Agreement and seven days to

reconsider and revoke consent. (ECF No. 29-1 ¶ 12). Given these undisputed facts, Plaintiff's assertion that she signed the Agreement under duress is without merit.

### 2. Knowing and Voluntary Execution

Plaintiff also argues that she did not sign the Agreement knowingly or voluntarily. (ECF No. 36-2, at 4).

> Even if [the plaintiff's] execution of the [agreement] was not obtained under duress, her execution . . . must still have been knowing and voluntary. *See, e.g. Cassiday*, 220 F.Supp.2d at 493. The validity of the [agreement] is determined by reviewing the totality of the circumstances surrounding its execution. *Id*. at 494. The factors to be considered are (1) [the plaintiff's] education and business experience; (2) the respective roles of [the defendant] and [the plaintiff] in determining the terms and conditions of the [agreement]; (3) the clarity of the [agreement]; (4) the time [the plaintiff] had to study the [agreement]; (5) whether [the plaintiff] had the advice of counsel; (6) whether the employer encouraged the employee to seek the advice of counsel and whether the employee had sufficient time to do so; and (7) the waiver's consideration. *Id*. The list of factors is non-exclusive, and no single factor is determinative. *Id*.

*Randolph*, 2014 WL 4661985, at *4.

Here, upon consideration of the totality of the circumstances, the court finds that Plaintiff knowingly and voluntarily waived her rights in exchange for an adequate severance payment. Plaintiff, a high school graduate, had more than a decade of experience in property management. (ECF No.

29-2, at 2). As an assistant property manager, Plaintiff often worked with leasing agreements and understood the importance of reviewing contracts before signing them. (*Id.* at 12-13). At the termination meeting with Ms. Crews, Plaintiff was presented with the Agreement, which she signed. There is no indication that Plaintiff had any involvement in establishing the terms of the Agreement. However, the Agreement is only three pages long and expressly releases all employment-related claims that Plaintiff might have against Defendant. (ECF No. 29-1 ¶¶ 8-9). After the meeting with Ms. Crews, Plaintiff took a copy of the Agreement with her and reviewed it at home, eventually reading the entire document. (ECF No. 29-2, at 5-7). Although she did not receive advice of counsel and had not previously signed a separation agreement, Plaintiff recognized that she was signing a contract (*id.* at 9) and understood the purpose of a separation agreement (*id.* at 7-8). Furthermore, the Agreement provided for a seven-day revocation period during which Plaintiff could have sought legal counsel. (ECF No. 29-1 ¶ 12). As consideration for executing the Agreement and releasing her claims, Plaintiff received $3,173 as separation payment, which she has retained. (ECF No. 29-2, at 11).

The evidence shows that Plaintiff acted knowingly and voluntarily in executing the Agreement and deciding not to revoke it. The Agreement itself expressly provides Plaintiff

the opportunity to revoke consent within seven days. She never did so, and to this day has not tendered back the severance payment she received. While Plaintiff was taken by surprise when her employment was terminated, she calmly spoke with Ms. Crews, asked pertinent questions, informed Ms. Crews of an upcoming visit by a vendor (ECF No. 36-3, at 25), tendered her keys, and took a copy of the Agreement with her upon leaving the office. Understandably, Plaintiff was occupied by looking for other employment after the termination meeting, but she had ample time to read the Agreement, consult with an attorney if she wished, and decide whether to revoke consent within the ensuing seven days. In addition, three weeks' pay constitutes adequate consideration for Plaintiff's release of claims. *See Randolph*, 2014 WL 4661985, at *5 ("[The plaintiff] received adequate consideration for her waiver of claims in the form of two weeks of pay.").

Plaintiff was not under duress when she executed the Agreement, and the evidence demonstrates that she did so knowingly and voluntarily. "By signing the [Agreement], failing to revoke it, and accepting payment under it, she chose to forego the uncertainty and expense of a lawsuit in favor of the certainty of a severance payment." *Id.* That is, nothing in the record undermines the conclusion that the Agreement was a bargained-for release foreclosing Plaintiff's ability to bring

13

claims related to her employment against Defendant. "The [c]ourt will not allow [Plaintiff], having knowingly and voluntarily waived her rights in exchange for a payment she has long since accepted, . . . to assert those rights now." *Id.* Accordingly, under the Agreement, Plaintiff is barred from bringing claims against Defendant under the ADA and the FMLA. Summary judgment will be entered in favor of Defendant.[2]

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted. Defendant's motion to stay discovery will be denied as moot, and Plaintiff's cross-motion for summary judgment will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[2] Plaintiff's motion for summary judgment on the merits of her claims will be denied.